UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 13-23620-CIV-ALTONAGA

ROD EISENBERG, *et al.*,

             Plaintiffs,

v.

CITY OF MIAMI BEACH, a Florida
municipality,

             Defendant.

_____/

## DEFENDANT CITY OF MIAMI BEACH'S MOTION TO DISMISS OR STRIKE PLAINTIFFS' COMPLAINT

Defendant City of Miami Beach (the "City") hereby moves this Court for an Order dismissing plaintiffs' Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b) and, alternatively, to strike plaintiffs' Complaint as a "sham" pleading.

## INTRODUCTION

The crux of this case is that vexatious litigants' refusal to install a sprinkler system, among other safety measures required by applicable law to operate as a hotel in a very old building in the City of Miami Beach, should amount to actionable statutory and constitutional violations. This lawsuit is just the latest in an onslaught of legal and administrative schemes employed by plaintiffs to try and force the City of Miami Beach into exempting this potential "fire trap" from the State's fire and safety regulations.[1] Plaintiffs are the owners and operators of the Sadigo Court Apartments ("Sadigo") on Miami Beach. Since 1936, Sadigo had held a Certificate of Occupancy ("CO") designating it an apartment house, which is an R-2 classification under Florida's Building Code § 310.1 ("Residential occupancies containing sleeping units or more than two dwelling units where the occupants are primarily permanent in nature"). In or about 2007, however, plaintiffs began running Sadigo as a hotel. Since that time, they have advertised and rented rooms on the property to a transient population, have operated an

---

[1] See video archive of oral argument, *Eisenberg Dev. Corp. v. City of Miami Beach*, No. 13-362 (Fla. 3d DCA 2012) (Schwartz, J., indicating Fire Marshall's finding essentially amounts to the building being a "fire trap"), link at http://3dca.flcourts.org/Archived_Video.shtml (search "Eisenberg"), at 9 minutes, 45 seconds.

on-premise restaurant and bar, have utilized the property for large-scale events without appropriate permits, and expressly sought a certificate of occupancy as a "hotel." The application for a new CO was denied because the hotel failed to comply with applicable fire and safety statutes, codes, rules, and regulations. Plaintiffs ultimately abandoned that CO application.

The City does not contend that plaintiffs have violated zoning regulations. Sadigo is located in an RM-2 zoning district, which allows for both transient and non-transient use. Thus, plaintiffs are free to re-designate Sadigo as a hotel without offending zoning regulations. The issue here has always been compliance with other laws, including Florida's Fire Prevention Code and Building Code. In order to utilize Sadigo for transient use, plaintiffs must bring the property into compliance with Fire and Building Codes. Unwilling to bring the structure into compliance, plaintiffs have instead resorted to making vague accusations that the City has violated their constitutional and statutory rights (to apparently operate a hotel without a sprinkler system, among other things). Plaintiffs' conspiratorial assertions and malicious avowals, however, do not obfuscate the real issue in this case: *safety*.

Here, plaintiffs' claims are wholly without merit, and each allegation should be dismissed or the entirety of their pleadings should be stricken as a sham. Plaintiffs have unsuccessfully attempted to litigate the same factual and legal allegations numerous times before. This latest attempt is barred under the Collateral Estoppel doctrine. Additionally, plaintiffs fail to properly allege a plausible Equal Protection, retaliatory First Amendment, or statutory violation claims, and inappropriately seek equitable relief in contravention to established principles of law. Plaintiffs' complaint twists the facts and bends the law trying to make it appear like the City has conspired to prevent plaintiffs from operating Sadigo as a hotel. In reality, the City has afforded, and, in fact, continues to afford plaintiffs, the administrative right and opportunity to run their business as a hotel. That such a right is conditioned on compliance with Florida's fire and safety standards does not bring plaintiffs claims into the purview of the constitutional and statutory violations they now allege.

## BACKGROUND

A. **Relevant Regulatory Framework Governing The Sadigo**

  1. *City Land Development Regulations (LDRs)*

The Planning Director is vested with authority to enforce the provisions of the LDRs. City Code §§ 114-7(a), 114-7(c). LDRs control what uses are permitted in the City's zoning

districts.  RM-2 zoning districts are for both transient and non-transient uses.  City Code § 142-212 ("The main permitted uses in the RM-2 residential multifamily, medium intensity district are single-family detached dwellings; townhomes, apartments, apartment-hotels; and hotels.").  In order to qualify to engage in such permitted uses, the property owner must obtain a certificate of use, CO, and business tax receipt.

| § 114-4. Compliance with regulations required | § 118-2. Certificates of occupancy; certificates of use |
|---|---|
| Except as provided in these [LDRs]: | |
| (1)  No land or water area may be used except for a purpose permitted in the district in which it is located. | (a)  *No building or structure, or part thereof, or premises*, which are hereinafter erected or altered, or *changed in occupancy*, or land upon which a *new or different use is established*, shall be occupied or used until a certificate of occupancy and certificate of use shall have been applied for and issued. |
| (2)  No land or water area may be used without an approved certificate of use | |
| 114-7. Enforcement . . . | |
| (c)  In case any building is erected, constructed, reconstructed, altered, repaired, or converted, or *any building or land is used in violation of these [LDRs]*, the city's planning and zoning director, building official, and director of the department of code compliance, or the city in their behalf *is authorized and directed to institute any appropriate action to put an end to such violation*. | (b)  Certificates of occupancy and certificates of use *shall not be issued* until the premises have been inspected and found to comply with *all requirements* of the *Code* of the city and of these [*LDRs*], and with the *requirements of all other agencies* having regulatory authority over the project. |
| (Emphasis added). | (Emphasis added). |

Pursuant to City Code § 114-1, a hotel use is defined as occupancy from "day to day, week to week, or month to month":

> Hotel unit means a room, or group of rooms, with ingress or egress which may or not be through a lobby, intended for rental to transients on a day-to-day, week-to-week, or month-to-month basis, not intended for use or used as a permanent dwelling . . . .

The presence or absence of cooking facilities is not dispositive as to whether a unit is classified as a hotel unit or not, as hotel units containing kitchen facilities are considered "suite hotel units."  *See* City Code § 142-1105. Unless and until the Planning Director, Building Official, and Fire Marshal (as an agency head with regulatory authority over the project) have determined that the requirements of applicable law have been satisfied, and sign off on the necessary permits and

licenses required to operate a hotel (including issuing a proper CO, certificate of use, and business tax receipt ("BTR")), a building owner cannot engage in such a use.

### 2.    *The Florida Building Code*

Pursuant to Florida Statutes § 553.775, the City Building Official is charged with interpreting and enforcing the Florida Building Code within the City to protect the public health, safety, and welfare. The commentary to Building Code § 105.1, which governs permitting, states, in part:

> [T]his section indicates a need for a permit change in occupancy, even if no work is contemplated. Although the occupancy of a building or portion thereof may change and the new activity is still classified in the same group, different code provisions may be applicable. The means of egress, structural loads and light and ventilation provisions are examples of requirements that are occupancy sensitive. The purpose of the permit is to cause the work to be reviewed, approved and inspected to determinate compliance with the code.

Chapter 3 of the Florida Building Code (2004) governs use and occupancy classifications.[2] Section 310.1 defines Residential Group R as follows:

| R-1 Residential occupancies where the occupations are primarily transient in nature, including: | R-2 Residential occupancies containing sleeping units or more than two dwelling units where the occupations are primarily permanent in nature, including: |
|---|---|
| Boarding houses (transient)<br>Hotels (transient)<br>Motels (transient) | Apartment houses<br>Boarding houses (not transient)<br>Convents<br>Dormitories<br>Fraternities and sororities<br>Monasteries<br>Vacation timeshare properties<br>Hotels (nontransient)<br>Motels (nontransient) |

The Code Commentary states that most of the nation's fire problems occur in Group R buildings. Because of the relative high fire risk and potential for loss of life in buildings so classified, the Code has stringent provisions for the protection of life in these occupancies. The key characteristic of the R-1 classification is the primarily transient nature of its occupants (*i.e.,*

---

[2] Should building owners wish to contest the Building Official's determination as to occupancy classification or challenge an interpretation, they may appeal to the Miami-Dade County Board of Rules and Appeals, pursuant to § 8-4 if the Miami-Dade County Code.

individuals' stay is less than 30 days).  Individual dwelling units in R-2 buildings are primarily occupied by individuals on a non-transient (*i.e.*, more permanent) basis.

### 3.    *Florida Fire Prevention Code*

Similarly, within the City's jurisdictional limits, the City's Fire Marshal is vested, by law, with the authority to interpret and enforce the Florida Fire Prevention Code in a manner that protects the public health, safety, and welfare.  Fla. Stat. §§ 633.026, 633.121, 633.13 (2007).[3] NFPA 101 of the Life Safety Code of Florida (§ 3.3.125) defines "hotel" as: "A building or groups of buildings under the same management in which there are sleeping accommodations for more than 16 persons and primarily used by transients for lodging with or without meals."[4] Annex A.3.125 to NFPA 101 states that "So-called apartment hotels should be classified as hotels, because they are potentially subject to the same transient occupancy as hotels.  Transients are those who occupy accommodations for less than 30 days."

Pursuant to Florida Statutes § 633.161, the Fire Marshal – upon a determination that an illegal use of property within the City constitutes an immediate danger to public health, safety, or welfare – has full authority to issue cease and desist orders and to order that a building be immediately vacated.  Fla. Stat. § 633.161(1) (2007) (authorizing the Fire Marshal to issue orders "to cease and desist from such violation, to correct any hazardous condition, to preclude occupancy of the affected building or structure, or to vacate the premises of the affected building or structure").

Should building owners wish to contest the Fire Marshal's determination as to the occupancy classification or challenge any of the Fire Marshal's interpretations or enforcement, they may appeal to the Miami-Dade County Fire Prevention and Safety Appeals Board pursuant to § 14-46 of the Miami-Dade County Code.

### B.    The Regulatory Actions Involving The Sadigo

#### 1.    *Plaintiffs' Change Of Use And Resulting Citations From The City*

Plaintiffs own allegations reveal that the subject regulatory action involving the Sadigo stemmed from plaintiffs' decision, in 2006, to change the Sadigo's primary use from apartment

---

[3] In July 2013, portions of Chapter 633 of the Florida Statutes were renumbered and amended. These changes have no effect on the case at hand.

[4] FL Administrative Rule 69A-43, "Uniform Fire Safety Standard for Transient Public Lodging Establishments," requires the Fire Marshal to consider a building with three units or more as a hotel.

(non-transient) to hotel (or so-called transient "apartment hotel").   In 1988, as plaintiffs allege, they acquired the Sadigo, which they operated as a non-transient apartment house.  Compl. ¶¶ 9; *see also* Compl. ¶ 25 (alleging use of Sadigo for "renting on an annual [*i.e.*, non-transient] basis").   In 2006, plaintiffs decided to change the use of the Sadigo from non-transient to transient.  Compl. ¶ 25.  Thereafter, plaintiffs registered the Sadigo as a "hotel" with the Florida Department of Business and Professional Regulation's Division of Hotels and Restaurants, *see* Compl. ¶ 26, and proceeded to construct a courtyard restaurant, which they called a "food preparation area," Compl. ¶ 29.

Next, plaintiffs allege that they applied with the City for a certificate of occupancy as a "hotel."  Compl. ¶ 32.  As discussed above, under applicable law (including the LDRs, Building Code and Fire Code), this change of use triggers multiple levels of review to ensure that the building complies with mandated protections intended to help protect the health, safety, and welfare of its occupants.  *See, e.g.*, LDR § 118-2, City Code ((a: no land upon which a new or different use is established "shall be occupied or used until a certificate of occupancy and certificate of use  . . . have been applied for and issued"; (b) no such certificates shall be issued "until the premises have been inspected and found to comply with all requirements of the Code . . .  and of these LRDs, and with the requirements of all other agencies having regulatory authority over the project."); Building Code § 105.1 (Commentary) (indicating the need for a permit change in occupancy "even if no work is contemplated" and indicating need for stringent fire protection in Group R classifications due to high fire risk and potential for loss of life); NFPA 101, Life Safety Code of Florida (§ 3.3.125) (reflecting that the Sadigo's 2006 change of use constitutes a "hotel" use for Fire Code purposes); Fla. Stat. § 633.161(1) (indicating Fire Marshal's authority to issue orders "to cease and desist from such violation, to correct any hazardous condition, to preclude occupancy of the affected building or structure, or to vacate the premises of the affected building or structure").   Based on the Sadigo's change of use, *see* Compl. ¶ 34, the City is compelled by law to require plaintiffs' compliance with fire safety and other regulations prior to allowing it to lawfully rent to transient guests.

As the public record reflects, in October 2007, the City Fire Marshal issued a cease-and-desist Order (#FI08000437), recognizing plaintiffs' change of use and indicating that the Sadigo

cannot operate as a hotel until their certificate of occupancy is approved.  *See* App'x Ex. 1.[5]  In December 2008, plaintiffs applied for a change of occupancy from apartment to hotel, and applied for a hotel license (Activity #00027365), both of which were ultimately denied.  *See* App'x Exs. 2-3.

On June 27, 2011, September 23, 2011, October 6, 2011, October 28, 2011, and December 2, 2011, the City Fire Marshal issued Notices of Violation and Cease and Desist Orders concerning the illegal transient/"hotel" use of the building.  *Eisenberg Dev. Corp. v. City of Miami Beach*, No. 11-20234 CA 15, *slip op.* at 2 (Fla. Cir. Ct., 11th Jud. Cir. Ct., Miami-Dade County Jan. 10, 2012) (the "1/10/12 Order") (App'x Ex. 4) (summarizing some of the relevant procedural history); *see also* App'x Exs. 5-7.  Plaintiffs elected not to pursue administrative appeals of these determinations of the City or its Fire Marshal.  1/10/12 Order at 2.

### 2.   *Plaintiffs Sought Only Limited Administrative Review Of The City's Conduct And Failed To Exhaust Administrative Remedies*

Plaintiffs' one administrative appeal was to the Miami-Dade County Board of Rules and Appeals ("BORA") related to a review of the determination of the City Building Official that plaintiffs' must install a fire sprinkler system.  *See* App'x Ex. 8 (the BORA decision).[6]  In its ruling in favor of the City, the BORA stated as follows:

> On April 15, 2010, the [BORA] considered an appeal relating to the Building Official's decision to require the installation of a fire sprinkler system and refuse to accept an Engineer's Equivalency Report.  The Engineer's report was submitted pursuant to FBC's Existing, 1105.2, 1106.1, and NFPA 914 and sought to demonstrate that the existing life safety features were equivalent to and negated the need for the installation of a fire sprinkler system.  The Building Official determined that the report was incomplete, and did not substantiate that the existing alternative systems and techniques in place were equivalent with the required life safety features in a building applying for an occupancy change.  The Board affirmed the Building Official's decision, ruling that the submitted

---

[5] "App'x Ex. __" refers to public records within the Appendix of Exhibits [DE 17].

[6] In 2010, plaintiffs submitted to the Fire Marshall a private engineering report suggesting that—despite their failure to have sprinklers and other fire safety measures – plaintiffs' existing fire safety systems (which are themselves required under the fire code) constituted an equivalent (*i.e.*, as good as) fire safety system notwithstanding the absence of additional features required by law.  In March 2010, the Fire Marshall completed her examination of the engineer's report and made detailed findings rejecting plaintiffs' equivalency arguments.  *See* App'x Ex. 9 (report reflecting Fire Marshal's findings).

report did not show sufficient evidence that the building was in compliance.

*Id*.  The BORA decision then informed plaintiffs of their rights to appeal to the Florida Building Commission and the Eleventh Judicial Circuit in and for Dade County Florida.  *Id*.  Plaintiffs did not pursue appeal of the BORA decision.

In 2010, plaintiffs also appeared in a series of hearings before the State of Florida's Historic Building Task Force to discuss the issue of fire safety at the Sadigo.  1/10/12 Order at 3. They were not able to convince the Task Force that the Fire Marshal was mistaken in requiring, on behalf of the City, that a sprinkler system be installed at the Sadigo in order for it to operate as a hotel for short term rentals.  *Id*.

### 3. *State Court Injunction Proceedings*

Rather than pursuing available administrative appeals, or pursuing a legal change to the permitted use of the building, the Sadigo petitioned for temporary injunctive relief in June 2011. Their petition culminated in a multi-day evidentiary hearing, and resulted in a 7/11/11 Order denying the plaintiffs' petition. In December 2011, plaintiffs filed a second petition in Circuit Court requesting a temporary injunction against the City, which also culminated in a multi-day evidentiary hearing and a 1/10/12 Order denying plaintiffs' request.  The following bullets are paraphrased from the 1/10/12 Order:

- At an evidentiary hearing on January 5 and 6, 2012, Sadigo presented evidence by way of its land use expert, Andrew Dickman, and purported fire expert, Bruce Turnin. Additionally, Sadigo called the City's Fire Marshal and City Planning Director Richard Lorber as adverse witnesses, as well as Rod Eisenberg, the owner and operator of Sadigo.
- The Court found based on witness testimony:
    - "[T]hat Sadigo is located in the RM-2 zoning district, and that under the Code of the City of Miami Beach, Florida (the "Code"), either "use" of the property, apartment or hotel, is a permitted use in that RM-2 district;
    - That although Sadigo can operate on a transient basis, it must do so legally, which requires a change to the Certificate of Occupancy ("CO") and Certificate of Use ("CU") for transient occupancy";
    - That "[t]he application for changing the CO and CU triggers review by the City's Building and Fire Departments, along with other regulatory departments and/or agencies."
- As to fire statistics, the Fire Marshal testified about the need to protect the public interest, and the procedure under the Florida Fire Prevention Code (FFPC) for administrative challenges to her findings.  *See*, Section 1.10 of NFPA 1.

- The Court also found, pursuant to Florida Statutes §§ 633.026, 633.121, and 633.13, that "it is the express intent of the Florida Legislature that the Fire Marshal has jurisdiction to interpret the Florida Fire Prevention Code in a manner that protects the public safety, health and welfare[,]" and "the City's Fire Marshal is specifically authorized by statute to enforce the laws and rules of the State Fire Marshal."

1/10/12 Order at 5.

In denying plaintiffs' injunction request (after only hearing plaintiffs' presentation), the state Circuit Court determined, as a matter of law, that adequate and available administrative remedies existed to plaintiffs, and that they failed to avail themselves of those remedies. According to the Court, "[i]t is clear that Sadigo has failed to exhaust its administrative appeal remedies, by either re-applying to the Historic Building Task Force or applying to the Miami-Dade Fire Prevention and Safety Appeals Board (pursuant to Miami-Dade County Code Sec. 14 - 46), before bring this action in Circuit Court." *See* 1/10/12 Order at 5.[7]

The Court also determined that Sadigo failed to meet the four requirements for issuance of the temporary injunction. Particularly, the Court found:

- A lack of proof of "irreparable harm and threatened injury" due to the failure to challenge the Fire Marshall's findings and to exhaust its administrative remedies;

- Based on the Fire Marshal's testimony, that there was no "likelihood of success on the merits";

- That the balance of equities favored the City because "life safety considerations of protecting the innocent public in a non-code compliant building, which is not properly 'CO'-ed as a hotel, or licensed as a hotel, outweighs any lost profits or loss of goodwill to Sadigo"; and

- That, under Florida law, "an action for monetary damages constitutes an adequate remedy at law" and "lost revenue and lost profits from the inability to rent hotel rooms can be compensated by an action for money damages."[8]

1/10/12 Order at 4-5.  The Court also ruled that "while the fire code does not regulate what can be built on land, in the sense of land development, it mandates requirements for the structure of a building, if used for certain purposes, in order to safeguard the public from fire hazards. *Id.*

---

[7] Recently, the Task Force ruled in favor of the City in connection with a second review. As of the time of this filing, the Task Force's written decision is still being prepared.

[8] Citing *Genchi v. Lower Florida Keys Hospital District*, 45 So. 3d 915 (Fla. 3d DCA 2010); *Daytona MIGI v. Daytona Automotive Fiberglass. Inc.*, 388 So. 2d 228 (Fla. 5th DCA 1980); *Belcher v. Import Cars. Ltd.*, 246 So. 2d S84 (Fla. 3d DCA 1971), *Liza Danielle, Inc. v. Jamko. Inc.*, 408 So. 2d 735 (Fla. 3d DCA 1982) (uncertainty or difficulty in proving a claim for damages will not preclude an action for money damages).

(citing *Galaxy Fireworks, Inc. v. City of Orlando*, 842 So. 2d 160 (Fla. 5th DCA 2003)).  One of those purposes is transient occupancy, and the City, its citizens and guests have a clear public interest in ensuring compliance with State law, the City's Code and the City's zoning plan. *Id.* (citing *Miami-Dade County v. Fernandez*, 905 So. 2d 213 (Fla. 3d DCA 2005)).

### 4.     The Appeal And Ultimate Dismissal Of The State Court Proceeding

The Circuit Court Order denying plaintiffs' injunction was appealed to Florida's Third District Court of Appeal.  On September 5, 2012, the Court of Appeal affirmed the lower court's order.[9]  *See Eisenberg Dev. Corp. v. City of Miami Beach*, 100 So. 3d 702 (Table), 2012 WL 3870943 (Fla. 3d DCA).[10]  The Third District's judgment was not appealed further; and, on remand, plaintiffs accepted voluntary dismissal of the state court suit.

## ARGUMENT

The Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) and/or stricken or dismissed as a "sham" pursuant to this Court's inherent authority.

## I.     PLAINTIFFS' COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE A PLAUSIBLE CLAIM FOR RELIEF

Although the court must view the complaint in the light most favorable to the plaintiff, "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).  "A complaint fails to state a claim if it does not appear plausible that the plaintiff can prove a set of facts which would entitle him to relief."  *See Roberts v. Wilson*, 259 F. App'x 226, 227 (11th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  As the Supreme Court has recognized, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."  *See Neitzke v. Williams*, 490 U.S. 319, 326 (1989).  Such "a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." *See id.* at 327.

While a court generally "limits its consideration to the pleadings and exhibits attached thereto," *see GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993), it may also consider "documents central to or referenced in the complaint, and matters judicially noticed,"

---

[9] Subsequently, the Third District also denied motions by plaintiffs for Clarification and a Rehearing *en banc*, as well as a Request for Written Opinion and Certification.

[10] An archived copy of the oral argument is available.  *See supra* at note 1.

*La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).[11]  Without question, public records are subject to judicial notice.  *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278-80 (11th Cir. 1999) (accepting judicial notice of public records on file with the SEC); *Universal Express, Inc. v. S.E.C.*, 177 F. App'x 52, 53-54 (11th Cir. 2006) (public records are among the permissible facts that courts take notice of and consider in connection with a motion to dismiss).

For at least the following reasons, this Court should dismiss plaintiffs' Complaint:

**A.     The Complaint Must Be Dismissed Because The Collateral Estoppel Doctrine Precludes Re-Litigation Of Essential Issues Of Fact And Law That Were Adjudicated Against Plaintiffs In Prior Proceedings**

The doctrine of collateral estoppel precludes the re-litigation of issues decided in prior proceedings involving the same parties or those in privity to them.  In order for collateral estoppel to apply, certain prerequisites must be met:

(1) the issue at stake must be identical to the one involved in the prior litigation;

(2) the issue must have been actually litigated in the prior suit;

(3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and

(4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding.

*Pincus v. Law Offices of Erskine & Fleisher*, 617 F. Supp. 2d 1265, 1268-69 (S.D. Fla. 2009) (citation omitted).  "Judgments," for purposes of the third prong, include not just court judgments (such as the 1/10/12 Order and the Third DCA affirmance of that Order) but also administrative decisions that are not appealed.  *See Fla. Transp. Serv., Inc. v. Miami-Dade Cnty.*, 757 F. Supp. 2d 1260, 1271 (S.D. Fla. 2010) (finding that collateral estoppel applied to render binding administrative finding that was a final decision on the merits that was not appealed) (citing *M.C.G. v. Hillsborough Cnty. Sch. Bd.*,  927 So. 2d 224, 227 (Fla. 2d DCA 2006) (giving preclusive effect to administrative order that was not appealed because "a determination that has become final in a prior case will be given preclusive effect even if it has not been subjected to appellate review.")).

---

[11]  *See also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

As to elements (1) to (3), there were many issues of fact and law necessarily adjudicated in prior proceedings that are identical to issues here.  For example, it was determined:

- That, in or about 2006 or 2007, plaintiffs changed the primary use of the Sadigo from non-transient to transient, triggering evaluation of the property under LDRs, the Building Code, and the Fire Code, among other requirements (and obtaining necessary permits, certificates, etc.), *prior to* engaging in the new primary use.  *See supra*.

- Notwithstanding these requirements, plaintiffs utilized the Sadigo for transient use in contravention of the law.  *Id.*

- Prior to obtaining permission from the City to use the Sadigo for transient occupancy, plaintiffs must bring the property into compliance with the Building Code and Fire Code, which includes *inter alia* installation of a fire sprinkler system.  *Id*.

- Plaintiff has refused to install a fire sprinkler system or take other measures required by the City to bring it into compliance with applicable law.  The purported equivalency report plaintiffs submitted "did not show sufficient evidence that the building was in [substantial] compliance" with applicable law notwithstanding its failure to have a sprinkler system.  BORA decision at 1.

- The City acted appropriately and in accordance with its requirements of applicable law in requiring that "that a sprinkler system be installed at the Sadigo in order for it to operate as a hotel for short term rentals."  1/10/12 Order at 2.

- Plaintiffs are not entitled to injunctive relief because, among other things, adequate remedies at law exist.  *Id.* at 4.

- Plaintiffs have failed to exhaust available administrative remedies.  *Id*.

As to the fourth and final element, plaintiffs had clear rights to appeal the final agency actions of the City, but failed to engage in and exhaust those remedies.  As to the state court case, the trial court's determination was appealed to the intermediate appellate court and affirmed.  No further appeal was taken, and plaintiffs ultimately dismissed the case.   Since these issues between the parties have already been fully and fairly adjudicated in the City's favor, they may not be revisited by plaintiffs in this suit.

### B.     Count I Otherwise Fails To State A Plausible Equal Protection Claim

Plaintiffs claim a violation of their rights to Equal Protection under the Fourteenth Amendment.  As is evident, Plaintiffs do not raise their equal protection claim based on their membership in any protected class.  However,

> [t]he Supreme Court has recognized that an equal protection violation can be proven even if the plaintiff comprises a "'class of one' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."

*Henry Co. Homes, Inc. v. Curb*, 548 F. Supp. 2d 1281, 1291 (N.D. Fla. 2008) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000); *also citing Mackenzie v. City of Rockledge*, 920 F.2d 1554, 1559 (11th Cir. 1991)).   Here, dismissal is appropriate because plaintiffs have: (1) failed to identify even one similarly-situated individual that the City has intentionally treated differently from plaintiffs; and (2) failed to plausibly allege the lack of a rational basis for the difference in treatment between plaintiffs and that individual.   Plaintiffs must sufficiently allege that the City has action is both "intentional and arbitrary"; in order to do that, the action "must eliminate any reasonably conceivable state of facts that could provide a rational basis . . . ."   *Id.* (citations omitted).   "This poses a 'very significant burden' to meet."   *Henry Co.*, 548 F. Supp. at 1291 (citation omitted).

### 1.     Plaintiffs Fail To Identify A Similarly Situated Building Owner

It is not surprising that plaintiffs are unable to identify a Miami Beach building owner desiring to change their use from non-transient to transient that was allowed by the City to operate in the new use without a fire sprinkler system or other required life safety protections. There would not be one.  The Fire Marshal is charged by law with the duty to enforce the Florida Fire Prevention Code.  Her approval is required before the City may authorize a new use.  If a building wholly fails to comply with applicable law, she cannot legally permit such non-compliance.

As the *Henry Co. Homes* court makes clear:

> "Class of one" plaintiffs may (just like other plaintiffs) fairly be required to show that their professed comparison is sufficiently apt. G*riffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1205 (11th Cir. 2007). The two comparators must be evaluated in light of all legitimate, objectively reasonable factors, and they must be found prima facie identical in all relevant respects. *Id*. at 1204 (citing *Campbell v. Rainbow City*, 434 F.3d 1306, 1314 (11th Cir. 2006)). Plaintiff having failed to show this even by inference, the Court cannot conclude that the two entities are similarly situated.

548 F. Supp. 2d at 1292.  No such individual is identified here; nor is there any allegation to support a finding that the individual is "prima facie identical" with plaintiffs.

### 2.     Plaintiffs Cannot Plead Facts Sufficient To Establish A Lack of Rational Basis

Further, there is no plausible argument that the City is acting irrational or in an "arbitrary and capricious" fashion by refusing to allow the Sadigo to operate in its new use as a transient

establishment unless and until it installs the legally required fire protections and otherwise brings the building into compliance with the applicable law.  As discussed above, the City and its officials are acting in the manner in which they are required to under the LDRs, Building Code, Fire Code, and other applicable law.  In state courts, and before state review boards (when plaintiffs elected to exercise their appeal rights), the decisions of the City have been confirmed. The fact that plaintiffs subjectively disagree with the determinations of the City, City officials, BORA, the State Historic Task Force, the Eleventh Judicial Circuit, and the Third DCA, does not render the City's conduct lacking in any rational basis.

Because plaintiffs fail to plausibly allege either someone similarly situated or that the City lacked a rational basis for its decisions, their Equal Protection claim necessarily fails.

### C.        Count II Fails To Plead A Viable First Amendment Retaliation Claim

Plaintiffs also lack a plausible basis for alleging a First Amendment retaliation claim. There are three *prima facie* elements plaintiffs must establish for a First Amendment retaliation claim: (1) they must be engaged in a constitutionally protected First Amendment activity; (2) the defendant must then commit an adverse action against plaintiffs resulting in an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) the exercise of that their constitutional rights must be the substantial or motivating factor for the purported adverse action.  *Mt. Health City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *see also Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668, 675 (1996).  If these elements are satisfied, the defendant then has the burden of establishing that the same allegedly retaliatory actions would have taken place in the absence of the constitutionally protected activity.  *Id*. at 285.  Here, plaintiffs cannot plausibly meet this standard.

As a preliminary matter, the allegedly retaliatory activity (enforcing applicable law against a law breaker) was not improper.  Indeed, as discussed above, it is the responsibility of the City and its Fire Marshal to enforce the law and protect the health, safety, and welfare of individuals within their jurisdiction.  Additionally, the substantial and motivating factor for the City's enforcement against plaintiffs is that they are required by law to do so.   The protected conduct alleged (*i.e.*, a mid-1990s lawsuit with the City and redevelopment challenge by Mr. Eisenberg) happened two decades before the relevant actions in this case.[12]  Plaintiffs do not

---

[12] Allegations related to allegedly protected activity occurring ***after*** the City determined that the Sadigo was not in compliance with the Fire and Building Codes cannot logically form

allege that the Fire Marshall or Building Official were even aware of the purported conduct, much less that it did (or, as a matter law, could have) impacted the determination that the Sadigo was not in compliance with the law.

Finally, since the City was compelled to comply with applicable law, and the Sadigo was not in compliance with that law, that the same actions by the City would have taken place in the absence of the constitutionally protected activity alleged. Accordingly, plaintiffs' First Amendment claim must be dismissed.

### D.   Plaintiffs' Due Process Claims (Counts III And IV) Fail Because, As The Public Record Makes Clear, Plaintiffs Were Accorded Significant Due Process

The Due Process Clauses of the Florida and Federal Constitutions require the City to merely accord plaintiffs notice and an opportunity to be heard. *See, e.g. N.C. v. Anderson*, 882 So. 2d 990, 993 (Fla. 2004). As a matter of uncontestable public record, plaintiffs have been accorded repeated notice that they would need to bring the Sadigo up to applicable Code in order to lawfully operate as a transient-use facility. *See supra* at 6-7 (collecting authority). In most cases, plaintiffs simply ignored these notices to their detriment. In other circumstances, plaintiffs initially availed themselves of opportunities to be heard regarding these issues – only to ultimately abandon the administrative-review process prior to its conclusion. *Id.* Among other things, plaintiffs availed themselves of opportunities to be heard before the Board of Rules and Appeals, the Historic Task Force, the Florida Circuit Court for the Eleventh Judicial Circuit, and Florida's Third District Court of Appeal.

The "notice" and "hearing" requirements are plainly established; and no part of the Due Process Clauses requires the City to permit transient rentals in an establishment that does not meet applicable fire standards. As such, dismissal of Counts III and IV are appropriate.

### E.   Plaintiffs' State Law Claims (Counts V and VI) Must Be Also Be Dismissed

Counts V and VI of plaintiffs' Complaint seeks declaratory and injunctive relief for alleged violations of Fla. Stat. 509.032(7)[13] and 633.202(6), respectively. These same statutory allegations were raised and rejected by both the Circuit Court and the Third District Court of

---

the basis of a First Amendment retaliation claim because there is simply no way to retaliation against someone for conduct that has not yet occurred.

[13] Count V's heading makes reference to Fla. Stat. 509.013, the Chapter's definitional section, but its body, and the allegations contained therein, reference Fla. Stat. 509.032(7).

Appeal in plaintiffs' previous litigation against the City. Once again, plaintiffs' statutory arguments found in Counts V and VI of their Complaint are, for at least three independent reasons, meritless and should be dismissed.

### 1. These statutes expressly do not affect the City's ability to enforce public health and safety laws, including Fire and Building Codes

Plaintiffs' Complaint mischaracterizes the nature and scope of the supposedly violated statutes. Count V states that Florida Statutes § 509.032(7) "provide[s] that regulation of public lodging establishments is preempted to the state . . . [and] provides that a local law, ordinance, or regulation may not restrict the use of vacation rentals, prohibit vacation rentals, or regulate vacation rentals based solely on their classification, use, or occupancy." Compl. ¶ 97. Count VI of the Complaint describes Florida Statutes § 633.202(6) as providing that "the Florida Fire Prevention Code does not apply to, and no code enforcement action shall be brought with respect to, zoning requirements or land use requirements." Compl. ¶ 105. Plaintiffs use these partial descriptions of the statutes to allege that the City, in applying its "Code and unwritten policies and practices to Sadigo Court" violated Florida Statutes § 509.032(7)'s provisions against regulating public lodging establishments and rental properties "based solely on their classification, use, or occupancy," and Florida Statutes § 633.202(6)'s provisions by relying on Florida's Fire Protection Code to require plaintiffs to comply with local and state fire ordinances. Compl. ¶ 99, 107. Plaintiffs' allegations collapse under a reading of the statutory language.

Neither section 509.032(7) nor 633.202(6) prevents the City from inspecting plaintiffs' property or enforcing local and state ordinances requiring plaintiffs to comply with applicable fire and safety codes, or necessitating plaintiffs install sprinklers or other fire safety protection systems on their property, before their property can be operated as a hotel. Florida Statutes § 509.032(7), for example, explicitly states that it "does not preempt the authority of a local government or local enforcement district to conduct inspections of public lodging and public food service establishments for compliance with Florida Building Code and the Florida Fire Prevention Code." Fla. Stat. § 509.032(7)(a). Similarly, section 633.202(6) states that it "shall not be construed to prohibit local government from imposing built-in fire protection systems or fire-related infrastructures requirements [such as sprinklers] needed to properly protect the intended facility." Fla. Stat. § 633.202(6). Because the City's actions, which are supposedly in violation of Florida's statutes (*i.e.*, enforcing local and state building and safety ordinances), are, in fact, explicitly contemplated and approved by the referenced statutes, plaintiffs claims should

be dismissed.[14]  Plaintiffs continue to misconstrue and improperly intermingle local zoning laws with State Fire and Building Codes in order to intentionally obfuscate the symbiotic—but distinct—relationship between those laws.

> **2.   There is no private right of action under either of these statutes, and plaintiffs are otherwise not entitled to the equitable relief sought**

In addition to misstating the nature and scope of sections 509.032 and 633.202, and the fact that those statutes are wholly inapplicable to the case at hand, Count V and Count VI of plaintiffs' Complaint should also be dismissed because neither statute provides a private right of action to the plaintiffs, and one should not be created by this Court.  Under Florida law, whether a private right of action for violation of a statute exists depends on legislative intent. *See, e.g.*, *Aramark Uniform & Career Apparel, Inc. v. Easton*, 894 So. 2d 20, 23 (Fla. 2004) ("Whether a violation of a statute can serve as the basis for a private cause of action is a question of legislative intent" determined "from the plain meaning of the statute"): *Murthy v. N. Sinha Corp.*, 644 So. 2d 983, 985 (Fla. 1994) (legislative intent to create a private right of action is the "primary factor" in determining whether a cause of action exists when a statute does not expressly provide for one); *Blinn v. Smith & Nephew Richards, Inc.*, 55 F. Supp. 2d 1353, 1361 (M.D. Fla. 1999). The statutes at issue here evince no legislative intent to create civil liability or to provide a private right of action. Accordingly, plaintiffs have no cause of action for the alleged statutory violations. Further, in as much as plaintiffs seek injunctive relief under these statutes, such a remedy is wholly inappropriate because monetary relief may be available and such relief is an adequate remedy at law. *See, e.g.*, *Genchi v. Lower Florida Keys Hosp. Dist.*, 45 So. 3d 915 (Fla. 3d DCA 2010); *Daytona MIGI v. Daytona Automotive Fiberglass, Inc.*, 388 So. 2d 228 (Fla. 5th DCA 1980); *Liza Danielle, Inc. v. Jamko, Inc.*, 408 So. 2d 735 (Fla. 3d DCA 1982).[15]

---

[14] Count V should also be dismissed as the laws and ordinances applied to plaintiffs by the City were adopted before June 1, 2011. *See* Fla. Stat. 509.032(7)(b)("This paragraph does not apply to any local law, ordinance, or regulation adopted on or before June 1, 2011.").

[15] Further, Count VI merely states a prayer for equitable relief based on the alleged underlying Constitutional and statutory violations which, for the reasons stated above, are subject to dismissal. Accordingly, the equitable relief sought in Count VI is inappropriate and plaintiffs' this claim should be dismiss.

### 3. *Plaintiffs have failed to exhaust available administrative remedies prior to proceeding with these claims*

In addition to the above stated reasons, Counts V and VI of plaintiffs' Complaint should be dismissed because plaintiffs have failed to exhaust their available administrative remedies. *See Eisenberg v. City of Miami Beach*, 1/10/12 Order at 3 ("It is clear that Sadigo has failed to exhaust its administrative appeal remedies").

### F.       Count VII, Seeking Equitable Relief, Must Also Be Dismissed

Plaintiffs' plea for equitable relief is inappropriate. As the underlying claims are subject to dismissal for the numerous reasons explained in this brief, relief is wholly inappropriate. Additionally, there can be no claims for injunctive relief here because, among other reasons, plaintiffs have an adequate remedy at law. *See supra* at 17 (collecting authorities).

For the foregoing reasons, dismissal with prejudice is appropriate.

## II.       PLAINTIFFS' COMPLAINT SHOULD ALSO BE STRICKEN AS A "SHAM"

"A sham pleading is one which is good in form, but false in fact." *Int't. Tel.& Tel. Corp. v. United Tel. Co. of Fla.*, 60 F.R.D. 177, 184 (M.D. Fla. 1973).  It is well established that federal courts are accorded with inherent powers, not governed by rule or statute, "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991); *Sahyers v. Prugh, Holliday & Karatinos*, *P.L.*, 560 F.3d 1241, 1244-45 (11th Cir. 2009).  One such inherent power is the authority to issue sanctions, including striking or dismissing a lawsuit on the basis that the party's pleadings include sham or frivolous assertions.  *See Bernal v. All American Invest. Realty, Inc.*, 479 F. Supp. 2d 1291, 1338 (S.D. Fla. 2007) (internal citations omitted). This power is deeply rooted in the common law tradition that a court may manage its own affairs and impose reasonable and appropriate sanctions upon those practicing before it. *Sahyers*, 560 F.3d at 1245.  A determination of bad faith is warranted where an attorney or party knowingly or recklessly pursues a frivolous claim, and exists when the court finds that fraud has been practiced upon it.  *Bernal,* 479 F. Supp. 2d at 1335. Accordingly, when a party or attorney knowingly or recklessly raises a frivolous argument, a court is within its right to issue sanctions, including striking or dismissing a pleading as a sham. *Id*.

The case at hand, for the numerous reasons stated above, represents a frivolous waste of judicial and municipal resources, and should be struck as such. Plaintiffs have manufactured constitutional and statutory wrongs, allegedly made by the City, in order to evade complying

with the City building and fire codes applicable to all property owners operating a hotel with transient guests. This case is just the latest vexatious challenge brought against the City. Accordingly, this Court should strike plaintiffs false and frivolous pleadings.

## CONCLUSION

For the various reasons set forth herein, defendant City of Miami Beach submits that it is entitled to an Order granting dismissal with prejudice for failure to state a claim and/or dismissing or striking plaintiff's Complaint as a sham.

Respectfully submitted,

JOSE SMITH, CITY ATTORNEY
CITY OF MIAMI BEACH
1700 Convention Center Drive, 4th Floor
Miami Beach, Florida 33139
Telephone:   (305) 673-7470
Facsimile:   (305) 673-7002

JORDEN BURT LLP
777 Brickell Avenue, Suite 500
Miami, Florida 33131-2803

Telephone:   (305) 371-2600
Facsimile:   (305) 372-9928

By  */s/ Rhonda Montoya Hasan*
    Rhonda Montoya Hasan
    First Assistant City Attorney
    Florida Bar No. 190039
    E-mail:  RhondaMontoya@miamibeachfl.gov

By  */s/ Jason Patrick Kairalla*
    Richard J. Ovelmen
    Florida Bar No. 284904
    E-mail:  rjo@jordenusa.com
    Jason Patrick Kairalla
    Florida Bar No. 594601
    E-mail:  jpk@jordenusa.com

*Counsel for Defendant City of Miami Beach*

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of November, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on counsel for Plaintiffs (David L. Smolker, Ethan J. Loeb, and Jacob T. Cremer, SMOLKER, BARTLETT, SCHLOSSER, LOEB & HINDS, P.A., 500 East Kennedy Boulevard, Suite 200, Tampa, FL 33602) via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Jason Patrick Kairalla*

211136v7

19