UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-23620-CIV-ALTONAGA

ROD EISENBERG, and EISENBERG
DEVELOPMENT CORP., a Florida corporation,
d/b/a SADIGO COURT APARTMENT HOTEL,

      Plaintiffs,

v.

CITY OF MIAMI BEACH,

      Defendant.

_____/

### DEFENDANT CITY OF MIAMI BEACH'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS OR STRIKE PLAINTIFFS' COMPLAINT

Defendant City of Miami Beach (the "City") respectfully submits this Reply in opposition to plaintiffs Response [DE 24] to the City's Motion to Dismiss or Strike Plaintiffs' Complaint [DE 16] (the "Motion").

### INTRODUCTION

Plaintiffs' case is a sham. The proprietors of the Sadigo Court Hotel ("Sadigo") do not want to pay for a fire sprinkler system and other legally-mandated fire safety protections required for them to legitimately rent rooms to transient guests. So, instead, they try to sidestep the law by now labeling their hotel operation an "apartment" and the its restaurant a "dining room" with "cold food preparation area." This bogus nominalism gets them nowhere because the relevant law does turn on such fictions. What matters here are: (i) the actual use plaintiffs make of the property, and (ii) the regulatory requirements triggered by the indisputable change from one use to another. Plaintiffs, however, believe labels do matter. As such, their misrepresentations regarding these labels amount to a fraud upon the Court since, in actuality, that plaintiffs market and operate the Sadigo as a "B&B"/hotel with a café restaurant.[1]

---

[1] *See, e.g.,* Resp. at 1 ("Plaintiffs were not and are not operating a hotel, meaning they were never required to apply for the change in occupancy. . . ."), 2 & n.1 (Plaintiffs were not operating a "restaurant" but rather an apartment house "dining room" with "cold food preparation area."). As Exhibit A hereto reflects, plaintiffs openly marketed the Sadigo as a "hotel," "apartment hotel," and "B&B," and their so-called cold-food dining room is a restaurant serving everything from omelets to steaks.

This case is not the complex morass that plaintiffs attempt to make it appear. There issues here are clear and simple. Issues plaintiffs have litigated over and over. At base, plaintiffs complain a series of non-discretionary acts resulting directly and inescapably from plaintiffs' decision to change the "use" of the Sadigo from non-transient to transient and from their refusal to either cease and desist with that use or install the safety features needed to qualify for a new certificate of occupancy ("CO") permitting the use. Plaintiffs' steadfast contention that they are not violating the law (by conducting transient rentals without the CO), does not change the law or the City's obligations under the law.

As alleged, after their long-time use of the Sadigo for annual room rentals, plaintiffs in 2006 admittedly began using the Sadigo for transient room rentals. Under the law, this change of use unquestionably required plaintiffs to apply for and acquire a new CO. Plaintiffs' application triggered a non-discretionary review by administrative agencies regarding whether the Sadigo complied with governing law. Fire and Building Codes require, among other things, a fire sprinkler system that the Sadigo does not have. As a matter of law, without bringing the building into compliance so that a new CO may issue, the Sadigo may not be used or occupied for transient rentals.

The mandatory nature of the City's relevant legal obligations, among other things, precludes plaintiffs' Equal Protection, retaliation, and Due Process claims. The City lacks discretion to permit occupancy where a building lacks required fire safety measures. How City officials allegedly feel about plaintiffs is irrelevant; they simply cannot sign off on a building that does not comply with the law. As such, these Constitutional claims are subject to dismissal. Additionally, plaintiffs' Florida statutory claims (Counts V and VI) are barred by the statutes' express exclusionary language, by the lack of a private right of action, and by plaintiffs' failure to exhaust administrative remedies. There is also no independent ground for declaratory or injunctive relief. For these and other reasons, the Court should grant dismissal.

## BACKGROUND

### A. Applicable Law Compels The City To Prohibit Transient Use Or Occupancy Of The Sadigo Prior To Issuance Of A New CO

Plaintiffs' 2006 change of the use of the Sadigo from non-transient room rentals to transient rentals without first obtaining a new certificate of occupancy ("CO") plainly

violates the law. The Response focuses on labels such as "apartment," "hotel," or "apartment hotel"; these labels, however, are immaterial. What matters is the actual use. Plaintiffs allege that they purchased the Sadigo in 1998, at which point the Sadigo was used for annual rentals. Plaintiffs admit that they continued with that non-transient use of the Sadigo (*i.e.*, "renting [rooms] on an annual basis") until 2006, when they decided to begin renting units on a "transient" basis. Resp. at 1.[2]

Under the Florida Building Code's "use and occupancy classifications," there is a plain distinction in use between R-2 non-transient residential occupancies and R-1 "transient" residential occupancies. *See* Motion at 4 (citing Fla. Bldg. Code § 310.1 (2004)). Under this Code, the alleged change in 2006 from annual to daily rentals unquestionably changed the use and occupancy classification from R-2 to R-1. This change of use ***necessitated*** application for a new CO, which in turn ***compelled*** a review of the Sadigo to ensure compliance with *inter alia* applicable Building and Fire Code requirements. *See* City Code §§ 118-2(a) (providing that, when a "building or structure" is "changed in occupancy" or a "different use is established," it shall not be "occupied or used until a certificate of occupancy and certificate of use shall have been applied for and issued"); 118-2(b) (stating that "[c]ertificates of occupancy and certificates of use shall not be issued until the premises have been inspected and found to comply with all requirements of the Code of the city . . . and with the requirements of all other agencies having regulatory authority over the project"); *see also* Motion at 2-5 (discussing other regulatory framework).

Here, the City requested that plaintiffs apply for a new CO, and plaintiffs complied with that request. City Code § 118-2 precludes any occupancy of the Sadigo for the new transient use until a new CO issues; and, under that section, a CO cannot issue until the Sadigo is inspected and found to be in compliance with all applicable law.

> **B.     The City Could Not Issue A CO Issued Due The Sadigo's Failure To Comply With Fire Safety Requirements**

Plaintiffs' CO application triggered a review by the City Fire Marshal and Building

---

[2] The issue here is Building and Fire Codes as applied to the Sadigo's current use. Plaintiffs assertions regarding the purported past "historic" use of the property, the Sadigo's treatment under zoning codes, or whether plaintiffs have complied with hotel tax requirements is entirely irrelevant.

3

Official, among others.  These officials correctly determined that the building did not meet the necessary fire and safety standard because *inter alia* it failed to have a proper fire sprinkler system.  Thus, a new CO never issued.  Notwithstanding, plaintiffs continued to operate the Sadigo for transient rentals, resulting in multiple "Notices of Violation" and "Cease and Desist Orders."  As the Motion explains, the determinations – that the Sadigo is non-compliant and, as such, a new CO cannot issue – have been repeatedly litigated in both administrative and judicial forums.  Motion at 6-7 (citation omitted).  In each instance, plaintiffs lost and ultimately abandoned their challenge.  *Id.*

## ARGUMENT

### I.   PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM FOR RELIEF

#### A.   Plaintiffs' Claims Are Barred By Collateral Estoppel

Plaintiffs' Response confuses collateral estoppel (a.k.a. issue preclusion) with res judicata (a.k.a. claim preclusion).  Collateral estoppel does not require identity of claim.  Rather, it requires identity of issues litigated in a prior proceeding involving the same parties or others in privity to them.  *See* Motion at 11-12 (collecting authority).  Many material issues here were previously litigated, including: (i) whether a new CO was required; (ii) whether operation of the Sadigo for transient use without a new CO was permissible; and (iii) whether it was necessary for plaintiffs to bring the Sadigo into compliance with Building and Fire Code (through, among other things, installation of a sprinkler system) before they could lawfully conduct the transient use.  *Id.* (discussing proceedings before Board of Rules and Appeals, the Task Force, the Eleventh Judicial Circuit of Florida, and Florida Third District Court of Appeal).  *Id*.

Plaintiffs argue that these prior proceedings do not involve constitutional claims.  Resp. at 6-7.  That superficial analysis misses the point entirely.  Plaintiffs' claims are premised on the incorrect assertion that plaintiffs legally could operate the Sadigo on a transient basis without a CO and/or that the City could issue a CO without the building being brought into compliance with applicable law.  Both of these are litigated issues that plaintiffs lost and, as a matter of law, should not be re-litigated here.

#### B.   Plaintiffs' Equal Protection Claim Fails

In its Motion, the City points out plaintiffs' failure to identify (by name or characteristics) "prima facie identical" building owners that were treated differently.

Motion at 13-14.  In Response, plaintiffs incorrectly assert that they are not required to specifically identify comparators.  Contrary to plaintiffs' assertions, the "similarly situated" pleading requirement in a "class of one" context is a heightened one. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1202-08 (11th Cir. 2007) (adopting the requirement that plaintiffs specifically plead facts supporting a finding that similarly situated individuals were treated differently); *Glover v. Mabrey*, 384 F. App'x 763, 778 (10th Cir. 2010) ("[Plaintiff] has failed to allege, as it must, the identity or characteristics of other, similarly situated contractors and how those similarly situated contractors were treated differently).³  Such specific allegations are required because plaintiffs must be able to "eliminate any reasonably conceivable state of facts that could provide a rational basis[.]"  *Henry Co. Homes, Inc. v. Curb*, 548 F. Supp. 2d 1281, 1291 (N.D. Fla. 2008) (citations omitted).  "This poses a 'very significant burden' to meet."  *Id.*

Case law cited in plaintiffs' Response is contrary to their assertion that specificity is not required.  *See, e.g., Pete Towing Co. v. City of Tampa*, 2008 WL 4791821, at *7 (M.D. Fla. 2008) (acknowledging that "[a] showing that two [persons] were similarly situated requires some specificity"). Indeed, none of plaintiffs' cases allow an Equal Protection claim where, as here, the plaintiffs utterly fail to allege a similarly situated individual, by either description or name. *See Village Willowsbrook v. Olech*, 528 U.S. 562, 565 (2000) (involving a class-of-one claim with specifically-identifiable property owners that were admittedly treated differently than plaintiff); *Griffin Indus.*, 496 F. 3d at 1200 (involving allegations that plaintiff "was 'singled out' by defendants and that a 'similarly situated' entity, American Proteins, had not been subject to similar treatment."); *Executive 100, Inc. v. Martin Cnty.*, 922 F. 2d 1536, 1538 (11th Cir. 1991) (involving uncontested fact that "[t]he Board . . . did grant an amendment to . . . the zoning of two parcels along Interstate 95" while refusing similar zoning change to plaintiff); *Mount Sinai Med. Ctr. v. Miami Beach*, 706 F. Supp 1525, 1530-31 (S.D. Fla.

---

³ *See also Leib v. Hillsborough County Public Transp. Comm'n*, 558 F.3d 1301, 1307 (11th Cir. 2009); *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1217 (10th Cir. 2011) (In this context, plaintiffs bear a "substantial burden" to plead and prove that others "similarly situated in all materials respects" were treated differently) (citation omitted); *Cordi-Allen v. Conlon*, 494 F.3d 245, 251 (1st Cir. 2007) (Class-of-one claims require "an extremely high degree of similarity between [plaintiffs] and the persons to whom they compare themselves.") (citation omitted).

5

1989) (hospital alleging that it received treatment "disparate from the treatment rendered to sister institutions, South Shore Hospital and St. Francis Hospital); *Stevens v. Holder*, 2013 WL 3056698, at *1 (N.D. Ga. Jan 16, 2013) (pro se plaintiff alleging that she was individually excluded from public immigration hearing).

Here, plaintiffs' allegations, at a minimum, would need to point to a building owner who was granted a change of use by the City (from non-transient to transient) notwithstanding the owner's failure to bring the property into compliance with the Fire and Building Codes related to fire safety. No such comparator exists.[4]

Furthermore, there is clearly a rational basis for requiring that the Sadigo meet applicable fire and building standards before the Sadigo may lawfully accept transient guests. Among other things, the health, safety, and welfare of transient guests are at stake, and the law compels this result. The Fire Marshal and Building Official's lack any meaningful discretion in these regards. Plaintiffs' application for a new CO was compelled by a desire to change the Sadigo's use. The Fire Marshal and Building Official's inspections were mandatory parts of the CO process, and those officials cannot sign off on the new CO until the building is brought into compliance with the law. False approval of Sadigo as being in compliance with the Fire Code could result in the Fire Marshal personally facing criminal and civil liability personally.

Because there are no specifically identifiable comparators, and because the City unquestionably had a rational basis for withholding approval for transient use of the Sadigo until it is brought into compliance with applicable law, plaintiffs' Equal Protection Claim necessarily fails.

    C.    **There Can Be No Viable Retaliation Or Substantive Due Process Claim On These Facts**

Plaintiffs' argument against dismissal of their retaliation and Due Process counts are premised on their incorrect assertions: (1) that, as a matter of law, the change in 2006 from annual to by-the-night room rentals was not a change in use requiring a new

---

[4] Plaintiffs' Response asks for an exception to this requirement of specificity for governmental conduct "wholly unrelated to any legitimate state objective" or with "no conceivable legitimate purpose." Resp. at 7-8. They cite no Eleventh Circuit case in support of this purported exception, which (in any event) would be inapplicable here where health, welfare, and fire safety constitute legitimate purposes and objectives for failing to permit a change of use in the absence of mandated fire sprinkler systems.

6

CO; and (2) that, under the circumstances of this case, the City had discretion to allow occupancy and use of the Sadigo for transient rentals notwithstanding its failure to comply with applicable Fire and Building Codes, which require *inter alia* installation of a fire sprinkler system.  As discussed above, because the parties have litigated these threshold legal issues in prior proceedings, the doctrine of collateral estoppel bars re-litigation here.  *Supra* Part I.A.  Assuming this was not the case, these simple issues are ripe for determination and, as a matter of law, must be resolved against plaintiffs' position.  *See supra* Background at A, B; *see also* Motion at 2-5.

In light of the above, it is clear that plaintiffs cannot state a plausible First Amendment retaliation or substantive Due Process claim.  First, the purportedly retaliatory conduct began in 2006 when the City allegedly tricked plaintiffs into applying for a new CO, presumably knowing that they did not need and could not qualify for one without significant hardship.  *E.g.*, Resp. at 2.  This alleged conduct was purportedly in retaliation for acts by plaintiffs in and around 1993 and 1995, over a decade earlier.  Compl. ¶¶ 10-13.  The significant lapse in time between the alleged conduct and the purported retaliation by the City renders implausible the allegation that the former caused the latter (or that the latter was in retaliation for the former).  This amounts to nothing more than a persecution complex.  Also implausible is any assertion that the City's conduct – in asking plaintiffs to obtain a CO or informing them that, in order to have transient rentals, the law requires installation of a fire sprinkler – was intended to or would likely have the effect of chilling a person of ordinary firmness from engaging in the conduct Mr. Eisenberg had not engaged in for over a decade.  *See* Motion at 14 (discussing elements of a First Amendment retaliation claim).  Because, in requesting that plaintiffs apply for a CO and requiring sprinklers, the City was merely doing what the law required it to do in order to protect health, safety and welfare, this conduct cannot plausibly be retaliatory.  It is plain that enforcement of the law (and not decade old conduct) was the substantial and motivating factor for the City's actions.  In any event, the City's actions were compelled by applicable law and, as such, would have taken place regardless of the constitutionally protected activity.

Plaintiffs' next alleged acts of *protected activity* occurred in 2011.  Specifically, in January 2011, Mr. Eisenberg allegedly expressed to the City Commission and City

officials his belief that he was being treated unfairly in connection with the Sadigo. Compl. ¶ 36.  In June 2011, he allegedly "chastised the City" to the media and characterized their dispute . . . as a 'David and Goliath' battle."  Compl. ¶ 40.  The alleged conduct of the City in 2011 and 2012 includes repeatedly citing plaintiffs for illegally operating the Sadigo for transient rentals without a CO and without legally required fire safety protections.  In June 2011, the City investigation revealed that the Sadigo was openly renting to transient guests (without a CO or necessary fire protections) and shut down the property.  Compl. ¶ 40.  This happened again in December 2011, when plaintiffs were illegally renting transient rooms.  See Compl. ¶ 42.

Building and Fire Codes, coupled with the requirement of City Code § 118-2, mandate that the City take action in these circumstances.  Plaintiffs cannot operate the Sadigo for transient rentals without complying with these laws and without obtaining a CO.  Plaintiffs have created a straw man by alleging that Mr. Eisenberg's decade-old *expressive* conduct somehow affected the City's non-discretionary decision to enforce its building and safety codes against plaintiffs' property.  The case law plaintiffs cite in their Response offers no support for this proposition.  Indeed, *none* of the cases finds a conduct to be retaliatory when the government is enforcing a *mandatory* law, ordinance, or safety code. Because the City's actions were non-discretionary, there can be no plausible link between the City's enforcement of its safety and building codes and any protected speech.[5]  Accordingly, plaintiffs' retaliation and Due Process claims fail.[6]

---

[5] This position is actually supported by plaintiffs' cases. In *Abella v. Simon*, 482 F. App'x. 522 (11th Cir. 2012) and *Smith v. Mosley*, 532 F. 3d 1270 (11th Cir. 2008), both cited by plaintiffs, the Eleventh Circuit held that a plaintiffs failure to sufficiently link purported retaliatory conduct to an expressive act to be fatal to a First Amendment retaliation claim. *Abella*, 482 F. App'x at 523 ("Although Abella's complaint alleges that Salazar knew Bocanegra was bent on harassing Abella, those facts fail to establish that Salazar ticketed Abella in retaliation for his protected conduct."); *Smith*, 532 F. 3d at 1279 (affirming summary judgment in favor of defendant because government "would have proceeded as they did—to charge Smith with violations of Rules 41 and 57—even if his letter had not contained what appeared to be legitimate grievances.").

[6] For reasons stated above, there were plain rational bases for the City's non-discretionary enforcement action.  As such, there can be no substantive Due Process claim.  Plaintiffs' cases are exclusively zoning, variance, permitting, or prosecutorial discretion cases, all of which implicate notions of governmental discretion being arbitrarily or capriciously misapplied to deprive plaintiffs of some constitutionally

### D.  Plaintiffs Implicitly Concede Dismissal Of Statutory Claims And Have No Cause For Equitable Relief

Plaintiffs' Response does not refute any of the multiple independent grounds for dismissal of their statutory, equitable relief claims.

First, the Response does not contest the portion of the City's Motion establishing that the subject statutes, Florida Statutes § 509.032 and § 633.202, specifically exempt from their provisions the exact enforcement action by the City that this case involves. Motion at 16-17 (citing and quoting statutes). Specifically, §509.032(7) "does not preempt the authority of a local government . . . to conduct inspections . . . for compliance with the Florida Building Code and Florida Fire Prevention Code." *See* § 509.032(7)(a). Plaintiffs also do not contest that, by its plain terms, § 509.032 does not apply to local laws adopted prior to June 1, 2011. *Id*. at n. 14. Section 633.202(6) does not "prohibit local government from imposing built-in fire protection systems or fire-related infrastructure requirements. . . ."

Second, plaintiffs do not rebut the City's argument that there is no private right of action under either of these statutes. *See* Resp. at 16-17. Instead, plaintiffs assert, without authority, that this does not matter when a court seeks equitable relief. They cite no case law in support of this distinction; and, in actuality, courts regularly dismiss claims for equitable relief where the underlying statute does not provide a private right of action. *See, e.g., California v. Sierra Club*, 451 U.S. 287, 297-98 (1981); *Chrysler Corp. v. Brown*, 441 U.S. 281, 285 (1979); *Seguros Comercial Am. v. Hall*, 115 F. Supp. 2d 1371, 1381-82 (M.D. Fla. 2000).

Third, regarding their failure to exhaust, plaintiffs cannot refute that they had administrative remedies for the underlying conduct that formed the basis of these purported statutory claims. They do not allege here that they pursued and exhausted these claims, which would be a prerequisite to bringing these state-law claims. Finally, plaintiffs' only response to the City's request to dismiss the equitable claims for relief contained in the Complaint is to argue that they are related to the statutory claims in

---

protected interest. These cases are of no moment as the City's decision to enforce its building and safety codes is non-discretionary, and plaintiffs do not challenge the constitutionality of Florida's Building Code generally.

Counts V and VI.  *See* Resp. at 15-17.  Because these claims fail (for the above-stated reasons), the derivative equitable relief claims should also be dismissed.

For these reasons, and others set forth in the City's Motion, dismissal is appropriate.

## II. GOOD CAUSE EXISTS TO STRIKE PLAINTIFFS' COMPLAINT AS A SHAM PLEADING

The response argues that the complaint should not be stricken as a sham unless there is evidence that plaintiffs have perpetrated a fraud upon the Court.  Resp. at 17.  The fraud here relates to plaintiffs' manufacturing of their claims by creating a false distinction between hotels and transient apartments (dining rooms and restaurants) and then falsely representing to the Court that plaintiffs have honored the purported distinctions.  Exhibit A hereto contains snapshots from plaintiffs' website (from 2006 to present) which establishes that is decidedly not the case.

## CONCLUSION

Based on the foregoing, defendant City of Miami Beach respectfully requests an Order granting its Motion and striking and/or dismissing plaintiffs' Complaint.

Respectfully submitted,

By */s/ Jason Patrick Kairalla*
Richard J. Ovelmen (Fla. Bar. No. 284904)
E-mail:  rovelmen@cfjblaw.com
Jason Patrick Kairalla (Fla. Bar No. 594601)
E-mail:  jkairalla@cfjblaw.com
Justin S. Wales (Fla. Bar No. 99212)
E-mail: jwales@CFJBLaw.com
CARLTON FIELDS JORDEN BURT, P.A.
100 S.E. 2nd Street
Miami Tower, Suite 4200
Miami, Florida  33131-2113
Telephone:  (305) 530-0050
Facsimile:   (305) 530-0055

*Counsel for Defendant City of Miami Beach*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of January, 2014, I electronically filed the foregoing document with the Clerk of the Court via CM/ECF, which will send notification of such filing to the following counsel of record::

David L. Smolker, Esq.
Ethan J. Loeb, Esq.
Jacob T. Cremer, Esq.
SMOLKER, BARTLETT, SCHLOSSER, LOEB & HINDS, P.A.
500 East Kennedy Boulevard, Suite 200
Tampa, FL 33602

*Counsel for Plaintiffs*

Rhonda Montoya Hasan, Esq.
First Assistant City Attorney
Aleksandr Boksner, Esq.
Senior Assistant City Attorney
City of Miami Beach
1770 Convention Center Drive
4th Floor
Miami, Florida  33139

*Co-Counsel for Defendant*

                                                                   */s/ Jason Patrick Kairalla*

*212289*